EXHIBIT L

GENERAL ORDER: 01-02

INDEX AS: F-12

SUBJECT: USE OF FORCE

PURPOSE: The purpose of this General Order is to ensure that officers shall use only that amount of force that appears reasonable to effectively bring an incident under control while protecting the lives of the officer and others. This policy has been adopted as a County-wide policy by the Sonoma County Law Enforcement Chiefs' Association.

I. DEFINITION OF REASONABLE FORCE

   A. California Penal Code Section 835a states:

   "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape, or to overcome resistance.

   "A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

   B. Under federal law (Graham v. Conner), the right to make an arrest carries with it the right to use objectively reasonable force. In determining whether force used by an officer is objectively reasonable, all of the facts and circumstances with which the officer was confronted are considered, including:

      1. The information available to the officer at the time of the incident;

      2. The acts of the suspect;

      3. Whether the suspect reasonably appeared to be a threat to the officer or to other persons;

      4. The severity of the crime of which the individual was suspected.

II. USE OF FORCE

   A. Police Officers may use force in the performance of their duties consistent with the California Penal Code:

      1. To prevent the commission of a public offense;

      2. To prevent a person from injury;

      3. To effect the lawful arrest or detention of persons resisting or attempting to evade that arrest or detention;
      4. In self-defense or in the defense of another person.

   B. Justification for the use of force is limited to what is reasonably known or perceived by the officer at the time the force is used.

ESCALATION/DE-ESCALATION OF FORCE

   A. Various degrees or levels of force are commonly recognized and practiced by law enforcement officers. Sometimes called <u>Force Options</u>, they range from the lowest level to the highest level and are generally grouped in order of the probability of injury or death to the suspect.

1

1. Low level.

    a. Uniform presence, verbal commands, demeanor, firm grip or gesture, physical control, pain compliance, and control holds.

2. Medium level.

    a. Carotid restraint, impact weapon, chemical agent, *and electronic control device.*

3. High level.

    a. Lethal force/firearms.

B. Officers are not required to progress through the levels of force one level at a time. An assessment of the specifics of each situation may indicate to the officer that a particular level of force may be ineffective or inappropriate and another level of force would be more effective or appropriate.

C. Officers shall assess the incident in order to determine which option will best de-escalate the incident and bring it under control in a safe manner.

IV. REPORTING THE USE OF FORCE

   A. Officers in the performance of any police duty shall report as soon as possible to their supervisor the use of the following types of force:

   1. Physical contact when the suspect is injured or alleges injury.

   2. Chemical agents.

   3. Carotid restraint.

   4. Impact weapons.

   5. The discharge of a firearm outside of the range.

   6. *Electronic control device.*

   B. The circumstances attendant to the use of the above listed types of force shall be documented in the crime/case report, or in its absence, in an incident report, describing the specific circumstances which required this use of force.

   C. When possible, photographs of any injury or alleged injured area shall be taken and logged into evidence/property.

   D. Reports that reflect <u>any</u> use of force defined by this policy as medium or high level shall be forwarded to the Administrative Investigations Section for review and tracking.

By Order Of: _____
MICHAEL A. DUNBAUGH, Chief of Police

MAD/TES/clc
DATE:                April 12, 2001
EFFECTIVE DATE:      April 12, 2001
SUPERSEDES:          General Order #96-09, Indexed F-12, dated June 9, 1996.

DISTRIBUTION:    Manuals
                 Supervisors
                 Bulletin Boards

City Attorney's Office

2


SUBJECT: FIREARMS POLICY

PURPOSE: To establish a uniform policy governing the discharge of firearms by Municipal and County law enforcement officers employed within Sonoma County. This policy is neither intended as, nor does it establish a legal standard for accomplishing assigned functions.

The Sonoma County Law Enforcement Chiefs' Association has enacted a uniform Sonoma County Firearms Policy. That policy is incorporated in this General Order.

I. WHEN FIREARMS MAY BE DISCHARGED

   A. Firearms may be discharged by sworn personnel, either on or off duty, in the performance of a policy duty only under the following circumstances:

      1. When training at an approved range.

      2. To kill a seriously injured animal or a dangerous animal that is attacking the officer or another person or persons, or which if allowed to escape, presents a danger to the public.

      3. To protect the officer or others from what the officer reasonably believes to be an immediate threat of death or serious bodily injury, or;

      4. To effect the arrest or prevent the escape of a fleeing felony suspect if the officer has reasonable cause to believe that:

         a. The crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or

         b. There is a substantial risk that the person to be arrested will cause death or serious bodily harm if the apprehension is delayed.

II. WHEN FIREARMS SHALL NOT BE DISCHARGED

   A. As a warning.

   B. At a moving or fleeing vehicle, unless it is in the necessary defense of a life.

III. DRAWING, DISPLAYING, AND HANDLING OF FIREARMS

   A. An officer shall not draw or display a firearm except under the following conditions:

1. For general maintenance, storage, or authorized training;

2. When the officer reasonably believes that it may be necessary to use a firearm in conformance with other provisions of this policy, such as, but not limited to, when entering a structure, area, or approaching a vehicle or situation in which there exists a possibility of death or serious bodily injury to the officer or other persons.

B. Officers shall not handle a firearm in a manner that could result in an accidental discharge. In all instances, firearms shall be handled in accordance with safety standards as taught during Department approved firearms training programs.

IV. POSSESSION OF FIREARMS AT CERTAIN FACILITIES

A. Officers may be called to locations where a request is made to secure firearms before entering. Officers are encouraged to evaluate the circumstances of such requests and utilize their best judgment. No officer is obligated to surrender a firearm unless entering a secured facility.

Example of such facilities are the county jail, juvenile hall, and any similar facility where access is controlled. Absent such control, the removal of firearms before entry is at the officer's discretion.

V. PROCEDURE WHEN FIREARM IS DISCHARGED

A. An officer who discharges a firearm either accidentally or in the performance of a policy duty, except at an approved range, shall report such circumstance to their supervisor, or the supervisor on duty, and shall submit a separate written report of the circumstance. This report shall be submitted through proper channels to the Chief of Police as soon as time permits or a period not to exceed twenty-four (24) hours.

By Order Of _____ SALVATORE V. ROSANO, Chief of Police

DATE: December 3, 1992

EFFECTIVE DATE: December 6, 1992
SUPERSEDES: General Order #91-04, Indexed F-3, Firearms Policy
General Order #90-02, Indexed F-3, Firearms Policy
Numbered Memorandum #89-6, Firearms Safety

2

GENERAL ORDER: 06-06

INDEX AS: R-27

SUBJECT: USE OF RIFLES CARRIED BY **PATROL** PERSONNEL

PURPOSE: The purpose of this policy is to establish a procedure governing the use, training and maintenance of the Department rifles issued to and carried by patrol personnel.

PROCEDURE

a. Rifles will be issued to and carried by patrol personnel who are qualified to use the weapon under the guidelines established in Section II.

   1. When stored in a vehicle, rifles will be carried with the loaded magazine inserted in the magazine well, and the safety AON.@ The chamber will be empty.

   2. In patrol vehicles, rifles shall be carried in the electro-lock rack inside the vehicle, when available, or secured in the trunk. When not in use, rifles will be secured in the Department armory with the magazine removed, chamber empty, and safety on. Home retention of the rifle or storage in the officer's personal locker, is only allowed with the prior approval of a supervisor.

   3. Patrol personnel carrying the rifle on duty shall inspect the weapon for proper functioning at the start of their work shift and ensure that the rifle magazines are loaded.

USE OF DEPARTMENT RIFLES

a. Department supervisors will ensure that only those officers who have been properly trained and qualified with the rifle are allowed to carry it on duty. Currently, there is a two-day initial qualification course and a one-day annual refresher course.

   1. Rifles will be primarily assigned to qualified officers working patrol in the Field Services Division (FSD), or assignments in FSD where the officer is primarily working in uniform, on the street, in a marked patrol vehicle. Qualified officers and supervisors assigned to the Special Services Division (SSD) will not be issued a rifle, however may remain rifle qualified by attending the annual rifle update. The exception will be officers and supervisors assigned to the Gang Team and Property/Narcotics Team. Officers and supervisors assigned to those teams, who were already rifle qualified while working in patrol, may retain their rifles in these assignments.

b. Deployment of the rifle lies with the assigned officer or when directed by a supervisor. Rifles are authorized in situations where, in the officer=s or supervisor's opinion, circumstances make the rifle the most appropriate weapon. The officer may deploy the rifle under a variety of circumstances that may include, but are not limited to:

   1. Need for shot capabilities other than that provided by handguns, submachine guns or shotguns.

   2. Need to have immediate on-scene rifle capability until SWAT members arrive.

c. Officers shall follow the General Order indexed as F-3, Firearms Policy, in regard to displaying and discharging the rifle, and the reporting procedure if the rifle is discharged either in the line of duty or accidentally.

TRAINING

a. The Department Training Sergeant is responsible for establishing a training program for the use of the rifle and maintaining related training records.

a.  The Department Training Sergeant will have overall responsibility for the **inventory and issuing of the rifles within the Department. Officers assigned a rifle will have overall responsibility for the proper sighting, care, cleaning, maintenance and proper storage of their rifle, as well as the magazines and accessories issued with the rifle.**

b.  The rifle will be removed from the vehicle and placed in the armory for safekeeping by Department personnel before any vehicle maintenance is performed.

c.  **Modifications or repairs to the assigned rifles will not be made except by an authorized Range Master or Armorer.** If Department personnel determine that a rifle is in need of repair or adjustment, they will submit it to the armory with a written explanation of the problem, and notify the Training Sergeant by e-mail or voicemail.

By Order Of: _____
EDWIN F. FLINT, Chief of Police

EFF/TES/erl

DATE: September 28, 2006

SUPERSEDES: General Order 02-01, Indexed as R-27, dated February 1, 2002.

DISTRIBUTION: Manuals
Supervisors
Bulletin Boards


GENERAL ORDER: 99-05

INDEX AS: E-18

# SANTA ROSA POLICE DEPARTMENT

## General Order Information Summary

**Topic:** Use of Extended Range Impact Weapons

1. Performance Responsibility: All personnel
   Supervisorial: All department supervisors
   General: All personnel

2. Use Requirement: All personnel at all times

3. Outside Impact: None

4. Training Requirements: Distribution of General Order

5. Internal Review: Annual

6. Special Distribution Requirements: None

7. How Indexed:

8. Effective Date: October 12, 1997

   a. Revised: March 14, 1999

9. Document Status:

10. Signature: _____
    Michael A. Dunbaugh, Chief of Police

GENERAL ORDER: 99-05

INDEX AS: E-18

SUBJECT: Use of Extended Range Impact Weapons

PURPOSE: The purpose of this General Order is to establish a policy regarding the use of        extended

1

I. DEFINITIONS

   A. Flexible Extended Range Impact Projectiles - also known as a "bean bag round". The Defense Technology 12 gauge round has the following characteristics:

   1. 2-3/4" standard plastic 12 gauge round.
   2. 42 gram lead shot payload, sewn into a two inch square fabric bag.

   B. Non-flexible Extended Range Impact Projectiles - The non-flexible extended range impact projectiles authorized for use are the KO1 and KO1LE rounds manufactured by Sage Control Ordnance Inc. The rounds have the following characteristics:

   1. 37mm cartridge case impact ammunition, aluminum, special rebated rim with reload capability.
   2. Projectile weight for the KO1 and KO1LE round is 77.5 grams.
   3. The projectile is one polyurethane baton type impact weapon with two replacement nylon rotating bands.

   C. Cover Officer - A cover officer is the officer assigned in a supportive role to the officer who will be deploying an extended range impact weapon. The cover officer is present to provide a lethal force option if necessary.

II. DELIVERY SYSTEMS

   A. Flexible Extended Range Impact Weapons - Flexible extended range impact projectiles are delivered through a Remington 870 shotgun. The shotguns used to deliver the flexible extended range impact projectiles have been painted green and have black slings attached to them. These designated shotguns shall only be used to deliver flexible extended range impact projectiles.

   B. Non-Flexible Extended Range Impact Weapons - Non-flexible extended range impact projectiles are delivered through the Sage SL6 multi-role projectile launcher. The Sage SL6 multi-role projectile launcher has the following characteristics:

   1. Fires a 37mm projectile.
   2. Has a maximum capacity of six rounds.
   3. A revolver type spring motor driven magazine with mechanically operated magazine stops.
   4. An 11" 37mm rifled barrel.
   5. Weighs approximately 9 pounds (unloaded).
   6. Rate of fire is a maximum of six rounds in three seconds.

III. PROCEDURE

   A. Circumstances in which an extended range impact weapon may be deployed are:

   1. Restoration or maintenance of order during civil disturbances.
   2. Controlling violent persons.
   3. Controlling vicious animals.
   4. Situations wherein a supervisor or officer deems their use necessary to safely resolve an incident.
   5. During approved training exercises.

   B. Only personnel who have successfully completed a departmentally approved training course in the

2

proper use and deployment of extended range impact weapons shall be authorized to deploy them during actual operations.

1. Any officer may make a request for the deployment of extended range impact weapons.

C. When an extended range impact weapon is requested or deployed, a sergeant shall be notified. The requesting officer shall tell the communications center the type (bean bag or Sage) and number of extended range impact weapon(s) needed to respond to the scene. Approval from the sergeant is not necessary to deploy or fire an extended range impact weapon. The sergeant shall respond to the incident as soon as practical. It is not necessary for the sergeant to arrive on the scene before discharging an extended range impact projectile.

D. When an extended range impact weapon is requested or deployed, the deploying officer shall assign a cover officer. This may be done with officers at the scene or requested through the communications center.

E. The Special Response Unit shall maintain one Sage SL6 multi-role projectile launcher and secure it either in the SRU locker or on the Mobile Emergency Response Vehicle. The remaining Sage SL6 multi-role projectile launchers shall be stored in Area and Operations supervisor's vehicles during the supervisor's shift, or stored in the armory. Area and Operations supervisors shall make every effort to have as many Sage SL6 multi-role projectile launchers available to officers in the field as possible.

F. The Remington 870 shotguns (referred to as a WIRE gun) used to deliver the flexible extended range impact projectiles shall be located in each patrol supervisor's vehicle. The remainder of the WIRE guns shall be located in the trunks of patrol cars equipped with locking Pelican cases. These vehicles shall be reserved for officers who have successfully completed a department-approved training course in the proper use and deployment of extended range impact weapons.

IV. MUTUAL ASSISTANCE

A. In the event another agency requests the Santa Rosa Police Department respond to an incident with an extended range impact weapon, a commander shall approve the request.

V. MEDICAL TREATMENT

A. Once a person has been struck with an extended range impact projectile, the person shall be transported to a hospital for medical clearance. The deploying officer or a supervisor shall determine whether the person shall be transported in a patrol car or by ambulance.

VI. REPORTING PROCEDURE

A. In instances where an extended range impact projectile is fired, except in training situations, the following documentation shall be required:

1. The deploying officer's report shall include the circumstances justifying the use of extended range impact projectile, the location deployed, the deploying officer, and any damage or injury as a result of its use.

2. The deploying officer shall complete a Use of Extended Range Impact Projectiles questionnaire. This questionnaire shall be routed to the Personnel Services Supervisor. Refer to Exhibit A.

B. Photographs

3

1. Photographs of the person who was struck by an extended range impact projectile shall be taken. The photographs shall include areas struck by an extended range impact projectile and any area alleged by the person to be injured. The exposed film shall be booked into evidence.

C. Evidence

1. Any projectile delivered through an extended range impact weapon (except during training) shall be collected and booked into evidence. If the projectile cannot be located, the deploying officer will document the efforts taken to locate the projectile.

MAD/TZS/sab

---

**Santa Rosa Police Department**
**Extended Range Impact Weapons**
**Post Deployment Questionnaire**

| CR# | Location |
|---|---|
| | |

| Name of deploying officer |
|---|
| |

| Name of cover officer |
|---|
| |

| Date and time of occurrence | Number of projectiles fired | Distance from target |
|---|---|---|
| | | |

| Area(s) of impact | Suspect's reaction | Nature of injuries and treatment received |
|---|---|---|
| | | |

Brief description of the nature of the call

What was the situation when you arrived?

Describe the suspects disposition, behavior, etc. during the incident

Explain the facts that governed the decision to use extended range impact projectiles

SRPD 286 (10/97)

4