# EXHIBIT B

```
                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA


PATRICIA DESANTIS,
individually and as Successor
in Interest for RICHARD
DESANTIS, deceased, and as
Guardian Ad Litem for DANI
DESANTIS, a minor and TIMOTHY
FARRELL, a minor,                       CERTIFIED COPY

        Plaintiffs,

vs.                                CASE NO. C 07 3386 JSW

CITY OF SANTA ROSA, JERRY
SOARES, RICH CELLI, TRAVIS
MENKE, PATRICIA MANN and DOES
1 through 25, inclusive,

        Defendants.
_____/



                      DEPOSITION OF

               RICHARD CELLI - VOLUME I

                   November 14, 2007




Reported by:            HANNAH KAUFMAN & ASSOCIATES, INC.
JUDY A. MANFRED           Certified Shorthand Reporters
CSR No. 4748                    472 Pacheco Street
                         San Francisco, California 94116
                                 (415) 664-4269
```

## Page 2

```
 1              I N D E X
                             PAGE
 2   DEPOSITION OF RICHARD CELLI - VOLUME I
 3   EXAMINATION BY MR. SCOTT              5
 4
 5
 6            E X H I B I T S
 7          (No Exhibits Marked.)
```

## Page 3

```
 1        BE IT REMEMBERED that pursuant to Notice of
 2   Taking Deposition, and on Wednesday, the 14th day of
 3   November, 2007, commencing at the hour of 1:39 p.m.
 4   thereof, at the offices of The Scott Law Firm, 1375 Sutter
 5   Street, Suite 222, San Francisco, California, before me
 6   JUDY A. MANFRED, a Certified Shorthand Reporter in the
 7   State of California, personally appeared,
 8                RICHARD CELLI,
 9   called as a witness herein; and the said witness, being by
10   me first duly sworn, was thereupon examined and testified
11   as is hereinafter set forth.
12
13              APPEARANCES
14       THE SCOTT LAW FIRM, 1375 Sutter Street, Suite
15   222, San Francisco, California 94109, represented by JOHN
16   H. SCOTT, Attorney at Law, appeared on behalf of the
17   Plaintiffs.
18       LAW OFFICES OF ERIC SAFIRE, 2431 Fillmore
19   Street, San Francisco, California 94115, represented by
20   ERIC SAFIRE, Attorney at Law, appeared on behalf of the
21   Plaintiffs.
22       OFFICE OF THE CITY ATTORNEY, 100 Santa Rosa
23   Avenue, Santa Rosa, California 95402-1678, represented by
24   CAROLINE L. FOWLER, Assistant City Attorney, appeared on
25   behalf of the Defendants.
```

## Page 4

```
 1                RICHARD CELLI,
 2   sworn as a witness by the Certified
 3   Shorthand Reporter, testified as follows:
 4                   -oOo-
 5       THE VIDEOGRAPHER: Good afternoon. This marks
 6   the beginning of volume 1, videotape 1 in the deposition
 7   of Richard Celli in the matter of Patricia Desantis, et
 8   al. versus City of Santa Rosa, et al. in the United States
 9   District Court, Northern District of California, Court
10   case number C 07-3386 JSW. Today's date is November 14th,
11   2007 and the time it 1:39. The location of this
12   deposition is 1375 Sutter Street, Suite 222, San
13   Francisco, California. The deposition was noticed by John
14   Scott of The Scott Law Firm and the videotape is being
15   produced on behalf of the plaintiff. The video operator
16   is James Taylor, a California Notary Public for the County
17   of San Francisco, employed by Dan Mottaz Video
18   Productions, LLC, 182 Second Street, Suite 202, San
19   Francisco, California 94105, 415-624-1300. The Court
20   Reporter is Judy Manfred.
21       Would counsel please identify themselves and
22   state whom they represent.
23       MR. SCOTT: John Scott appearing for the
24   plaintiffs.
25       MR. SAFIRE: Eric Safire appearing for plaintiff.
```

## Page 5

```
 1       MS. FOWLER: Caroline Fowler, Assistant City
 2   Attorney appearing for all of the defendants.
 3       THE VIDEOGRAPHER: If there are no stipulations
 4   the Court Reporter may administer the oath.
 5       (The oath was administered by the Court
 6        Reporter.)
 7           EXAMINATION BY MR. SCOTT
 8       MR. SCOTT: Q. Would you state your full name
 9   for the record, please?
10       A. Richard Todd Celli.
11       Q. Have you ever been known by any other names?
12       A. No.
13       Q. You are a sergeant with the Santa Rosa Police
14   Department; is that correct?
15       A. Yes.
16       Q. And do you have a preference whether I refer to
17   you as Mr. Celli or Sergeant Celli?
18       A. Mister is fine.
19       Q. Mr. Celli, my name is John Scott. I'm one of the
20   attorneys who represents the plaintiffs in this case.
21   That would be Richard Desantis, wife, and his two-year-old
22   daughter in a lawsuit that's been brought against the City
23   of Santa Rosa, you and others, relating to a shooting
24   death that occurred earlier this year in April.
25       First of all, just so we have it clear that
```

**Page 106**

1  A. I wanted Mr. -- Officer Menke to give orders that
2  Mr. Desantis would understand and follow.
3  Q. Towards what end?
4  A. A safe resolution to the situation.
5  Q. And what was that going to be?
6  A. Taking him into custody.
7  Q. Oh. At some point did you see this as a 5150
8  situation?
9  A. I don't know what I had at the time.
10  Q. At some point did you learn that Mr. Desantis was
11  bipolar?
12  MS. FOWLER: Object. Assumes facts not in
13  evidence. You can answer that if you have an
14  understanding.
15  THE WITNESS: I don't know if Mr. Desantis was
16  bipolar or not.
17  MR. SCOTT: Q. Did -- at some point that night
18  did you hear anyone say that?
19  A. Yes.
20  Q. Who said it?
21  A. Patricia.
22  Q. When did she first say that to you?
23  A. After he had already been stopped.
24  Q. When you say stopped, what do you mean by that?
25  You mean killed?

**Page 107**

1  A. When he had been shot.
2  Q. So you heard Mrs. Desantis say that her husband
3  was bipolar after he was shot?
4  A. Yes.
5  Q. Did you hear her say that to anyone before he was
6  shot?
7  A. No.
8  Q. To your knowledge, had she told that to anyone
9  before he was shot?
10  A. I believe the call taker.
11  Q. And was that something you heard on the radio
12  traffic before you arrived?
13  A. I don't know.
14  Q. But you heard something in the radio traffic that
15  described Mr. Desantis as bipolar?
16  MS. FOWLER: Object. That misstates his
17  testimony.
18  THE WITNESS: I don't know.
19  MR. SCOTT: Q. Okay. And by that, you don't
20  remember or you --
21  A. I don't recall hearing specifically that
22  Mr. Desantis was bipolar.
23  Q. Did you hear that he was suffering from any kind
24  of psychosis or mental illness or mental or emotional
25  problem, anything that would come within the category of

**Page 108**

1  mental illness?
2  A. I don't recall hearing it.
3  Q. So you heard Officer Menke give commands to
4  Mr. Desantis. Did Mr. Desantis appear to hear and
5  understand the commands?
6  A. Yes.
7  Q. Did it appear to you that he was complying with
8  those commands?
9  A. Hesitantly.
10  Q. What do you mean by that?
11  A. Officer Menke would have to repeat commands over
12  and over.
13  Q. And did Officer Menke have to make several
14  commands before Mr. Desantis responded?
15  A. Yes.
16  Q. At this point did you believe that another option
17  would have been to negotiate instead of make commands?
18  A. No.
19  Q. Why not?
20  A. Mr. Desantis had to be controlled.
21  Q. Did you believe that you could control him
22  through negotiations?
23  A. No.
24  Q. Why did you believe that?
25  A. Based upon Mr. Desantis's reactions and the

**Page 109**

1  dynamics of the situation.
2  Q. What was it about his reactions and dynamics of
3  the situation that led you to believe that commands were
4  necessary instead of negotiations to get control of the
5  situation?
6  A. It was my belief that Mr. Desantis still posed a
7  threat to his family, the community, and the officers and
8  that he had to be detained to make sure that there weren't
9  any injuries to anyone there.
10  Q. I agree. This guy needed to be detained and put
11  in handcuffs and locked up. Nobody is disputing that. My
12  question is, why did you think the best way to accomplish
13  that was through commands instead of negotiation?
14  A. Mr. Desantis never spoke a word.
15  Q. In response to commands?
16  A. Correct.
17  Q. Was there any attempt to negotiate with him?
18  A. No.
19  Q. Okay. And based on your training, are you
20  trained in certain situations where people do not respond
21  to commands, it might be appropriate to try to negotiate
22  with them?
23  A. Repeat the question.
24  Q. Are you trained in situations where suspects do
25  not respond to commands that it might be appropriate to

STATE OF CALIFORNIA

I do hereby certify that the witness in the foregoing deposition was by me duly sworn to testify the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of the said witness was reported by me, a Certified Shorthand Reporter and a disinterested person, and was under my supervision thereafter transcribed into typewriting; that thereafter, the witness was given an opportunity to read and correct the deposition transcript, and to subscribe the same; that if unsigned by the witness, the signature has been waived in accordance with stipulation between counsel for the respective parties.

And I further certify that I am not of counsel or attorney for either or any of the parties to said deposition, nor in any way interested in the outcome of the cause named in said caption.

IN WITNESS WHEREOF, I have hereunto set my hand the 26th day of November, 2007.

_____
Certified Shorthand Reporter
CSR No. 4748