# EXHIBIT C

```
            IN THE UNITED STATES DISTRICT COURT

         FOR THE NORTHERN DISTRICT OF CALIFORNIA

                        ---oOo---

PATRICIA DeSANTIS,              )
individually and as Successor   )
in Interest for RICHARD         )
DeSANTIS, deceased, and as      )
Guardian Ad Litem for DANI      )
DeSANTIS, a minor,              )
                                )
              Plaintiffs,       )
                                )
     vs.                        )
                                )   No. C-07-3386 JSW
                                )
CITY OF SANTA ROSA, JERRY       )
SOARES, RICH CELLI, TRAVIS      )
MENKE, PATRICIA MANN, and DOES  )
1 through 25, inclusive,        )
                                )
              Defendants.       )
                                )
_____)
```

DEPOSITION OF JERRY SOARES

December 20, 2007

REPORTED BY:  A. MAGGI SAUNDERS,

C.S.R. No. 2755


A. Maggi Saunders & Associates
Certified Shorthand Reporters

57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755
(415) 383-6281

## Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2        FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     ---oOo---
 4  PATRICIA DeSANTIS,                )
    individually and as Successor     )
 5  in Interest for RICHARD           )
    DeSANTIS, deceased, and as        )
 6  Guardian Ad Litem for DANI        )
    DeSANTIS, a minor,                )
 7                                    )
              Plaintiffs,             )
 8                                    )
         vs.                          )
 9                                    )  No. C-07-3386 JSW
10  CITY OF SANTA ROSA, JERRY         )
    SOARES, RICH CELLI, TRAVIS        )
11  MENKE, PATRICIA MANN, and DOES    )
    1 through 25, inclusive,          )
12                                    )
              Defendants.             )
13                                    )
                                      )
14
15
16
17
18        DEPOSITION OF JERRY SOARES
19            December 20, 2007
20
21
22
23
24  REPORTED BY: A. MAGGI SAUNDERS,
25              C.S.R. No. 2755
```

## Page 2

```
 1                I N D E X
 2
 3                                    Page
 4  Examination by MR. SCOTT            6
```

## Page 3

 1       BE IT REMEMBERED that, pursuant to Notice
 2  of Taking Deposition, and continued by Stipulation,
 3  and on Thursday, the 20th day of December, 2007,
 4  commencing at the hour of 1:30 o'clock p.m. thereof,
 5  at the SCOTT LAW FIRM, 1375 Sutter Street, Suite 222,
 6  San Francisco, California 94109, (415) 561-9600,
 7  before me, A. MAGGI SAUNDERS, a Certified Shorthand
 8  Reporter in and for the State of California, there
 9  personally appeared
10
11       SERGEANT JERRY SOARES,
12
13  called as a witness by the Plaintiffs, who, being by
14  me first duly sworn, was thereupon examined and
15  interrogated as hereinafter set forth.
16
17            ---oOo---
18
19       SCOTT LAW FIRM, 1375 Sutter Street, Suite
20  222, San Francisco, California 94109, (415) 561-9600,
21  represented by JOHN HOUSTON SCOTT, ESQ., appeared as
22  counsel on behalf of Plaintiffs.
23
24       OFFICE OF THE CITY ATTORNEY, CITY OF SANTA
25  ROSA, 100 Santa Rosa Avenue, Post Office Box 1678,

## Page 4

 1  Santa Rosa, California 95402-1678, (707) 543-3040,
 2  represented by CAROLINE L. FOWLER, ASSISTANT CITY
 3  ATTORNEY, appeared as counsel on behalf of
 4  Defendants.
 5
 6       EUREKA STREET LEGAL VIDEO, 511 Eureka
 7  Street, San Francisco, California 94114, (415)
 8  643-9190, represented by VINCENT SPANIER,
 9  VIDEOGRAPHER, appeared as to videotape the
10  proceedings on behalf of the PLAINTIFFS.

## Page 125

  1  MR. SCOTT: Q. Okay. So you don't know
  2  whether he was going to try to run past them or at
  3  them, and whether he was going to kiss them, hug them,
  4  tackle them, punch them, you don't know?
  5     A. Well, kiss them or hug them, I could
  6  probably rule that out.
  7     Q. Why?
  8     A. Just by his demeanor and his running, he
  9  wasn't showing any expression or emotion of joy of
 10  seeing our presence there, or welcoming the presence
 11  of -- of us being there.
 12     Q. Did he say anything the entire time you
 13  were there before you shot him? Did he call you a
 14  "pig" or a "cop," or say anything mean or nasty to you?
 15     A. No.
 16     Q. He didn't swear at you, call you any bad
 17  names?
 18     A. No.
 19     Q. Did he threaten you verbally?
 20     A. No.
 21     Q. Did he insult you?
 22     A. No.
 23     Q. Did you hear him say anything?
 24     A. No.
 25     Q. Did you think you were dealing with

## Page 126

  1  somebody who was crazy or under the influence?
  2     A. At that point, I didn't know what I was --
  3  or what we were dealing with.
  4     Q. Right. It could have been somebody who
  5  was crazy or under the influence, right, you just
  6  didn't know?
  7     A. Correct.
  8     Q. Okay. Now, would it be fair to say at
  9  this point he did not appear to be acting rationally?
 10     MS. FOWLER: I'm going to object that it's
 11  vague and ambiguous, but if you can answer the
 12  question, go ahead.
 13     MR. SCOTT: Q. Well, he's got five cops,
 14  they are pulling guns at him, and he's not obeying
 15  them: Is that rational behavior?
 16     A. I don't know what he would -- you know,
 17  for him, if he didn't know -- I don't know what was
 18  going on in his head, whether it was rational --
 19     Q. I'm not asking you.
 20     I'm asking, based on your life
 21  experiences, would that be rational behavior, with
 22  five police officers pointing guns at you, to not
 23  obey their commands?
 24     A. [No audible response]
 25     Q. Or is it just kind of another day at the

## Page 127

  1  beach, this happens all the time?
  2     MS. FOWLER: I'm going to object. That's
  3  argumentative.
  4     THE WITNESS: I am going to say, in police
  5  work, I mean, it happens.
  6     MR. SCOTT: Q. How many times have you
  7  seen someone, where five officers were pointing a gun
  8  at him, and he disobeyed commands, and ran at the cops,
  9  in 24 years?
 10     A. I mean, I can't say, because the scenario
 11  is different. I mean, there is other times where it
 12  has happened where a suspect has assaulted an officer,
 13  while a weapon or firearm was pointed.
 14     Q. In your experience in the field, how many
 15  times have you seen a suspect run at officers and
 16  disobey commands, when you had a number of officers
 17  pointing guns at that person, and the person did not
 18  appear to have a weapon, at least you couldn't see one?
 19     A. I mean, there has been a number of times
 20  throughout my career where it's happened.
 21     Q. Okay. And in how many of those times was
 22  the person shot and killed?
 23     A. [Long pause] None, that I was there on.
 24     Q. Except this one?
 25     A. Yes.

## Page 128

  1     Q. Oh. Now, approximately how many feet or
  2  yards did Mr. DeSantis charge or move from when he got
  3  up and started running toward the officers to the time
  4  you fired, if you can give it to me in feet, yards or
  5  steps.
  6     A. (Thinking/Pause) About 5 to 7 yards.
  7     Q. Okay. And then you fired your Sage,
  8  correct?
  9     A. Yes.
 10     Q. And as you were getting ready to fire the
 11  second round, the second Sage round, you heard Sergeant
 12  Celli's rifle fire, correct?
 13     A. Yes.
 14     Q. Were you surprised that he fired?
 15     A. [Pause] I don't remember being surprised
 16  when I heard the report of the rifle shot.
 17     Q. Okay. Do you remember what you were
 18  thinking or feeling when you heard?
 19     A. I was just assessing that, you know, the
 20  situation, and if there was a reaction or a response to
 21  the shot.
 22     Q. Were you wondering if he saw something you
 23  didn't see?
 24     A. At that time, no.
 25     Q. At any time since then, have you wondered

```
                        )
STATE OF CALIFORNIA     )    ss.
                        )
```

## CERTIFICATE OF REPORTER

I, A. MAGGI SAUNDERS, a Certified Shorthand Reporter in and for the State of California, duly appointed and licensed to administer oaths and so forth, do hereby certify:

That the witness named in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth;

That the deposition was reported by me, a Certified Shorthand Reporter and disinterested person, and thereafter transcribed into typewriting under my direction;

That if the deposition has not been signed by the time of trial, a reasonable opportunity having been given the witness to do so, signature has been waived in accordance with stipulation between counsel.

IN WITNESS WHEREOF, I have hereunto set my hand and subscribed my signature this 29th day of January, 2008.

*A. Maggi Saunders CSR*

A. MAGGI SAUNDERS, C.S.R. No. 2755,
Certified Shorthand Reporter,
In and For the State of California

---

A. Maggi Saunders & Associates
Certified Shorthand Reporters

57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755

(415) 383-6281