CAROLINE L. FOWLER, City Attorney (SBN 110313)
JOHN J. FRITSCH, Assistant City Attorney (SBN 172182)
City of Santa Rosa
100 Santa Rosa Avenue, Room 8
Santa Rosa, California 95404

Telephone: (707) 543-3040
Facsimile: (707) 543-3055

Attorneys for Defendants
CITY OF SANTA ROSA; EDWIN FLINT, in his capacity
as Chief of Police for the CITY OF SANTA ROSA;
RICH CELLI, an individual and Officer of the
SANTA ROSA POLICE DEPARTMENT; TRAVIS MENKE,
an individual and Officer of the SANTA ROSA POLICE DEPARTMENT;
and PATRICIA MANN, an individual and Officer of the
SANTA ROSA POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA DESANTIS, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF SANTA ROSA, et al.,<br><br>  Defendants.<br>_____/ | Case No. C 07-3386 JSW (consolidated with C 07-4474)<br><br>**REPLY TO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 17, 2008<br>Time: 9:00 a.m.<br>Ctrm: 2<br><br>**Trial Date: January 20, 2009** |

Defendants City of Santa Rosa; Ed Flint; Rich Celli; Patricia Mann; and Travis Menke submit the following reply brief in response to Plaintiffs' opposition to their Cross-Motion for Summary Judgment.

## I.

## INTRODUCTION

Plaintiff Patricia DeSantis, individually and as the Successor in Interest for Richard DeSantis, deceased and as Guardian Ad Litem for Dani DeSantis filed a Motion for Summary Adjudication only as to Defendant Rich Celli.

1  The Defendants opposed said motion and filed their own cross-motion for summary judgment on both consolidated cases on behalf of all defendants.  Defendants contend that there was no constitutional violation of Mr. DeSantis's rights and that even if the court were to determine that such a violation occurred, the individual officers are entitled to qualified immunity.  The motion also asserts that there is no evidence to support either supervisorial liability against Chief Flint or liability against the City of Santa Rosa.

Plaintiff Patricia DeSantis, individually and as the Successor in Interest for Richard DeSantis, deceased and as Guardian Ad Litem for Dani DeSantis ("Plaintiffs") filed their reply regarding the Motion for Summary Adjudication and filed opposition to defendants' motion for summary judgment.

No opposition to the Motion for Summary Judgment was filed on behalf of Plaintiff Adrianne DeSantis.

Plaintiffs' opposition fails to address the key legal and factual issues that support summary judgment in favor of defendants.  The opposition is based on speculation, fails to address key facts that are not in dispute and misstates of the law.  The fact that plaintiffs repeatedly state that the acts of the defendants were unreasonable does not make them so. Plaintiffs fail to provide any in depth analysis which shows that even assuming there was a constitutional violation that the officers are not entitled to qualified immunity.

Additionally, plaintiffs fail to present any credible evidence to support their Monell claims against the City or show any causal relationship between any alleged municipal acts and the alleged constitutional violations.

## II.

### PLAINTIFFS' ANALYSIS OF THE CONSTITUTIONAL VIOLATION IS FLAWED

Plaintiffs' analysis of the alleged constitutional violation glosses over several key undisputed facts and focuses solely on the fact that it was determined after the shooting that in fact Mr. DeSantis was not armed with a weapon and that the officers did not observe what they believed to be a weapon on his person during the incident.  This completely ignores the fact that

1  the officers were advised that they were responding not just to a person with a mental crisis but
2  to a report of an active shooter.

3        Plaintiffs also continually describe Mr. DeSantis as a person with a mental illness
4  suffering a crisis when in fact the record reflects that he was armed with a gun prior to the
5  officers' arrival and that he was discharging the gun in a residence in which minor children were
6  present and further that was under the influence of drugs.  Contrary to what plaintiffs attempt to
7  argue, there is no recognized different standard for a police response applied to persons with
8  mental illness or emotional distress, it is only one factor to be considered. *Deorle v. Rutherford*
9  (9th Cir. 2001) 272 F.3d 1272, 1283 ("We do not adopt a per se rule establishing two different
10 classifications of suspects: mentally disabled persons and serious criminals"); *Blandford v.*
11 *Sacramento County* (9th Cir. 2005) 406 F.3d 1110.

12       It was not unreasonable under the circumstances for the officers to attempt to gain control
13 of Mr. DeSantis which they did through verbal commands and ordering him to get down on the
14 ground at which point they intended to approach him when he was in a safe position and
15 handcuff him.  Unfortunately, the situation rapidly changed when Mr. DeSantis sprang up and
16 charged at the officers without any provocation by the officers.  No force had been used on Mr.
17 DeSantis up to that point in time other than commands and the officers' uniformed presence.

18       In this case, contrary to plaintiffs' assertions, the court is not required to rely solely on
19 "self-serving" statements of the defendant officers.  Here, there were six officers on scene–only
20 three of whom are defendants.  There was an independent eye witness, Joseph Silny.  In addition,
21 the testimony of Mrs. DeSantis does not dispute the critical facts at issue–that her husband had a
22 gun and was firing shots into the ceiling of their residence, that she called 911, that the officers
23 had to repeatedly give commands to Richard DeSantis for him to comply, that he got up and
24 charged the armed officers without any provocation.

25       Although each of the witnesses observed the incident somewhat differently, as could be
26 expected with this many witnesses with different lines of sight and recollection, there is no
27 dispute as to the material facts that support defendants' motion for summary judgment.  Only
28 disputes over facts that might affect the outcome of the suit under governing law preclude the

1  entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505; 91
2  L.Ed. 2d 202 (1986).
3       First, there is no dispute that the incident was a rapidly evolving situation that took place
4  over only a matter of minutes from the time the officers arrived on scene until shots were fired.
5  (See Deposition Testimony of Rich Celli, page135, lines 134, line 22-page 135, line 4, attached
6  as Exhibit D to the Declaration of Caroline L. Fowler; Deposition Testimony of Travis Menke,
7  page 71, line 25-page 72, line 3, attached as Exhibit F to the Declaration of Caroline L. Fowler.)
8  Plaintiffs have not provided any information to the contrary.
9       There is also no dispute that Mr. DeSantis charged at the officers who had their weapons
10 drawn.  (Deposition Testimony of Jerry Ellsworth page 72, lines 17-24, page 103, lines 6-page
11 104, line 11 attached as Exhibit H to the Declaration of Caroline L. Fowler; Deposition of Rich
12 Celli, page 117, lines 5-24 attached as Exhibit D to the Declaration of Caroline L. Fowler
13 Deposition Testimony of Joseph Silny, page 48, line 8-15; page 35, lines 7-12; page 37, line 4-25
14 attached as Exhibit P to the Declaration of Caroline L. Fowler; Deposition testimony of Patricia
15 DeSantis, page 171, line13-page 172, line 12; page 175, line 2-15attached as Exhibit C  to the
16 Declaration of Caroline L. Fowler; Deposition Testimony of Rich Celli, page 125, line 24- page
17 127, line 25 attached as Exhibit D  to the Declaration of Caroline L. Fowler; Deposition
18 Testimony of Jerry Ellsworth, page 72, line 5-25 attached as Exhibit H to the Declaration of
19 Caroline L. Fowler; Deposition Testimony of Daniel Jones, page 61, line 5-23 attached as
20 Exhibit I to the Declaration of Caroline L. Fowler.)  Plaintiffs completely discount the fact that
21 Mr. DeSantis charged at the officers who had their weapons drawn and that he could have taken
22 one of their weapons or injured them. Further, although the officers testified that they did not
23 observe a weapon in his hands, they had not had an opportunity to search him and did not in fact
24 know that he did not have a weapon.  Even assuming that Mrs. DeSantis made the statement that
25 she had disarmed him which no one else reported having heard (Deposition Testimony of Rich
26 Celli, page 82, line 11-1; Deposition Testimony of Joseph Silny, page 31, lines 15-22 attached as
27 Exhibit P to the Declaration of Caroline L. Fowler)., it was still not unreasonable for the officers
28 to have concern over their safety.

1   There is absolutely no authority that under such circumstances the officers are required to
2   take their chances on hand to hand combat in order to retain their weapons and prevent injury to
3   themselves or others when they are being attacked before using deadly force.  In fact, as indicated
4   in the moving papers, less lethal force was used when the SAGE round was fired and was
5   unsuccessful. (Deposition of Travis Menke, page 94, line 4-line 25; Deposition of Rich Celli,
6   page 133, lines 15-25, page 134, line 22-page 135, line 12; Deposition of Jerry Ellsworth, page
7   75, lines11-25, attached as Exhibit H to the Declaration of Caroline L. Fowler; Deposition of
8   Daniel Jones, page 67, line 11-page 70, line 5; Deposition of Jerry Soares, page 30, line 22-page
9   31, line 15; Deposition of Joseph Silny, page 96, line 2-9  attached as Exhibit P to the
10  Declaration of Caroline L. Fowler)

11  Additionally, Plaintiffs misstate the law.  As discussed in defendants moving papers, there
12  is no constitutional requirement for a police officer to use the least intrusive amount of force or
13  exhaust other levels of force before using deadly force.  *Scott v. Henrich* 39 F.3d 912 (9th Circuit
14  1994); *Reynolds v. County of San Diego,* 84 F.3d, 1162, 1170, overruled on other grounds. There
15  is no special standard for unconstitutional use of deadly force; the same reasonableness standard
16  applies. *Scott v. Harris* ___ U.S. __; 127 S.Ct. 1769, 167 S.Ct. 2d 686 (2007); *Acosta v. Hill* (9th
17  Cir. 2007) 504 F.3d 1323.

18  Although plaintiffs cite to *Scott v. Henrich* in their brief , they fail to address that portion
19  of the opinion cited in defendants moving papers (Defendants' Memorandum of Points and
20  Authorities, pages 12-13), which clearly holds that an officer is not required to use the least
21  intrusive alternative.

22  Plaintiffs cite to *Smith v. City of Hemet* (9th Circuit 2005) 393 F.3d 689 for the proposition
23  that the court should consider the availability of alternative measures.  The court indicated that
24  "**in some cases**" that may be a factor.  However the court went on to state:
25   "Next, it is necessary to apply the <u>Graham</u> criteria  beginning with the 'most
       important single element of the three factors: whether the suspect poses an
26     immediate threat to the safety of the officers or others.'" 393 F.3d at 702.
27  In *Smith,* the court found that there was no basis in the record for the police to believe that
28  the suspect was armed or a danger to the officers and he did not attempt to run from the officers

1  or attack them. In the instant case, the officers were advised that Mr. DeSantis had a gun and
2  was firing the weapon while he was in the residence. He also charged at the officers in an
3  attempt to either attack them or escape.
4      Even if the court considers this factor, it does not change the law cited in the moving
5  papers that an officer is not required to use the least amount of force available. As the court
6  succinctly stated in *Scott v. Henrich, supra,* at page 915*:*

> **" Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment.** In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only. **Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment."** (*Id.,* at page 915*, emphasis added)*

13      The fact that Plaintiff's expert, in the quiet of his office and with the benefit of hindsight
14  disagrees with the reasonableness of the officers actions is insufficient to create a triable issue of
15  fact. As stated by the court in *Reynolds v San Diego* (9th Cir. 1996) 84 F.3d 1162, 1170

> "the fact that an expert disagrees with an officers actions does not render the officer's actions unreasonable. The inquiry is not 'whether another reasonable or more reasonable interpretation fo the events can be constructed...after the fact.' [citations omitted] Rather, the issue is whether a reasonable officer could have believed his conduct was justified."

### III.

### PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

22      Plaintiffs' brief provides a cursory and conclusionary analysis of the issue of qualified
23  immunity essentially arguing that the defendants are not entitled to qualified immunity because
24  their use of deadly force was unreasonable. However, plaintiffs have failed to cite any specific
25  case or authority that would have put an officer on notice that in a situation such as this where a
26  suspect is charging at them when they have their weapons drawn and they are in fear of their
27  lives that it would be unreasonable to defend themselves by the use of deadly force.
28      An officer is entitled to qualified immunity even if he makes a reasonable mistake

regarding the legality of his actions. *Haynie v. County of Los Angeles,* 339 F.3d 1071 (9th Cir. 2003). Thus, even if the officers' actions violate the fourth amendment, a reasonable but mistaken belief that his conduct was lawful would result in a grant of qualified immunity. *Wilkins v. City of Oakland* (9th Cir, 2003) 350 F. 3d 949.

As stated in the moving papers, in the context of excessive force, the mere general proposition that use of excessive force violates the fourth amendment is not enough to establish whether the right is clearly established. The right must be established with sufficient specificity that a reasonable officer would understand that what he is doing violates that right. *Saucier v. Katz,* 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001).

The law has clearly held that an officer may use deadly force if the suspect poses a significant threat of death or serious physical injury. *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed. 2d 1 (1985). Thus, even if in the heat of this tense and rapidly evolving situation the officers were mistaken in their assessment of the risk to themselves and others, the law was not so clearly established that they would have known that they were violating Mr. DeSantis's constitutional rights. Contrary to plaintiffs' characterization this was not merely "unarmed suspect attempting to flee". This was a suspect charging at armed officers who had been in possession and firing a weapon which the police did not know if he still had. They had split seconds to make a decision with the knowledge that the less lethal SAGE round that had been fired failed to stop Mr. DeSantis in his attack on the officers. To suggest that the officers were required to drop their weapons and reach for a taser or pepper spray as Mr. DeSantis was bearing down on them is ludicrous.

Plaintiffs essentially argue in hindsight, knowing that Mr. DeSantis was in fact not armed, that it was unreasonable for the officers to have believed that Mr. DeSantis was still armed. Plaintiffs further fail to acknowledge that in fact Mr. DeSantis had committed crimes by discharging a weapon in an occupied residence. Although the officers acknowledge that they did not see a weapon in their limited observation of Mr. DeSantis, they had been told that he had been firing a weapon before they arrived and had no opportunity to search him. There were still places a small gun like a glock could have been hidden. Even if he did not have a gun, he could

1  certainly have harmed the officers by taking one of their own weapons or by physically attacking
2  them.  The officers are not required to hope that they can overpower him at the risk of their own
3  lives and the lives of their fellow officers.

### IV.

### NO FACTS SUPPORT IMPOSITION OF PERSONAL LIABILITY AGAINST CHIEF FLINT

The opposition filed by the Plaintiffs does not address the cause of actions asserted by Adrianne DeSantis against Chief Flint as an individual since they did not name him as a defendant in their complaint.  As stated above, Adrianne DeSantis did not file any opposition to defendants' motion.

A supervisor cannot be held personally liable for by virtue of his or her position.  Rather, liability based upon constitutional violations of his subordinates can only be predicated on actual knowledge a constitutional violation was occurring or failure to act to prevent the harm.  There is no respondeat superior liability under §1983.  *Taylor v. List* (9th Cir. 1989) 880 F.2d 1040, 1045.

Here, as shown in the moving papers, Chief Flint had no personal involvement in the incident or any knowledge of the incident until after the fact.  There are no facts in the record sufficient to impose personal liability upon him.

### V.

### PLAINTIFFS HAVE FAILED TO ESTABLISH ANY GENUINE TRIABLE ISSUE OF MATERIAL FACT REGARDING THEIR MONELL CLAIMS

Plaintiffs assert in a conclusionary and unsubstantiated basis that there are three bases for their *Monell* claims which are discussed below :

1. <u>Failure to train officers to respond to 5150 situations</u>

As detailed in greater detail  in the moving papers with respect to the policy and training issues, the plaintiffs must establish a causal relationship between the alleged constitutional violation and the policy or lack of training. In order to impose municipal liability under Section 1983, plaintiffs must show that the City made a "deliberate" or "conscious" choice to fail to train its employees adequately.  *Monell, supra*; *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct.

1197, 103 L.Ed 2d 412 (1989); *Boyd v. Benton County,* 374 F.3d 773 (9th Cir. 2004). Where a plaintiff claims that his injury was not directly inflicted by a municipality, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable simply for the actions of its employee." *Board of the County Commissioners of Bryan County v. Brown,* 520 U.S. 397; 117 S.Ct. 1382; 137 L.Ed 2d 626 (1997). It is not sufficient to establish simple or even heightened negligence on the part of a city. *Id*., at p. 407

Here, there is no causal connection with respect to the lack of training on 5150 situations and the use of deadly force by the officers. Here, Mr. DeSantis charged at the officers without any provocation by the officers. Plaintiffs contend that they were unreasonable in their response to his actions and used excessive force which has no correlation to lack of knowledge of dealing with persons who have mental health issues.

Moreover, Plaintiffs cannot show deliberate indifference on the part of the City with respect to the alleged lack of training. As testified to by the City's training Sergeant, Clay Vanartsdalen, the City did provide its officers with training on dealing with emotionally disturbed individuals and in fact provided training beyond the POST mandated training. Plaintiff has cited no legal requirement for any specific training on 5150 situations or how that would be any different from the training that was provided. It is pure speculation that the situation would have resulted any differently if the officers had such additionally training.

    2. <u>Ratification of the Officers Acts</u>

Plaintiffs contend that the City is also liable because Chief Flint allegedly ratified the acts of the officers based solely on the fact that he reviewed the incident after the fact and did not impose any discipline on the officers. This is insufficient to impose liability on the City.

    3. <u>A "Defacto" policy encouraging excessive use of force</u>

Plaintiff has presented no evidence of a "defacto" policy or a pattern or pervasive practice of excessive force by officers of the Santa Rosa police department. As the authorities cited in the moving papers establish, the plaintiff cannot establish a policy based on a single occurrence.

It is also disingenuous to try to establish an alleged "de facto" policy merely by posing questions to certain witnesses as to their understanding of the policy in the context of litigation.

There is no evidence that the interpretation of the witnesses was part of any training or that there was any "policy" other than the written use of force policy. As stated in the Declaration of Joseph Callanan, the use of force policy is consistent with other law enforcement use of force policies. In addition, as discussed in the moving papers, the use of force policy is consistent with the law.

More importantly, with respect to each of these basis asserted for liability, there can be no liability against the City in the absence of a constitutional violation by the officers. For the reasons set forth above, there was no violation.

## VI.
## CONCLUSION

For the foregoing reasons and those set forth in defendants moving papers, defendants, jointly and severally, respectfully move this court for summary judgment in their favor.

Dated: September 25, 2008                           /S/
                                        _____
                                        Caroline L. Fowler
                                        City Attorney
                                        Attorney for Defendants
                                        City of Santa Rosa, Santa Rosa Police Chief Ed Flint,
                                        Santa Rosa Police Officers Rich Celli, Travis Menke,
                                        and Patricia Mann