CAROLINE L. FOWLER, City Attorney (SBN 110313)
JOHN J. FRITSCH, Assistant City Attorney (SBN 172182)
City of Santa Rosa
100 Santa Rosa Avenue, Room 8
Santa Rosa, California 95404

Telephone:  (707) 543-3040
Facsimile:   (707) 543-3055

Attorneys for Defendants
CITY OF SANTA ROSA; RICH CELLI, an individual and Officer of the
SANTA ROSA POLICE DEPARTMENT; TRAVIS MENKE,
an individual and Officer of the SANTA ROSA POLICE DEPARTMENT;
and PATRICIA SEFFENS f/k/a PATRICIA MANN, an individual
and Officer of the SANTA ROSA POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA DESANTIS, et al., | Case No. C 07-3386 JSW |
| Plaintiffs, | **MOTION *IN LIMINE* NO. 2:**<br>**EXCLUDE EVIDENCE OF PRIOR OR**<br>**SUBSEQUENT "USE OF FORCE"**<br>**ACTS** |
| v. | |
| CITY OF SANTA ROSA, et al., | Hon. Jeffrey S. White |
| Defendants. | Pretrial Conference: July 2, 2012<br>Time: 2:00 p.m.<br>Ctrm: 11, 19th Floor |
| / | Trial Date: September 4, 2012 |

Defendants anticipate that plaintiffs will seek to introduce evidence of prior or subsequent

"use of force" acts by CITY and/or individual officer defendants.  In particular, Defendants

anticipate that Plaintiff may attempt to introduce evidence regarding the involvement of

Defendant Richard Celli in a prior shooting incident which resulted in the death of the suspect

(Thurston Case) .  The facts and circumstances in such case are substantially different from this

case.  In addition, the federal court granted summary judgment in favor of Defendant Celli in the

civil suit arising out of said prior incident.  See Order Granting Summary Judgment attached

hereto as Exhibit A which the court is requested to take judicial notice of.

1       Additionally, Mr. Burris's office has a claim pending against the City for an incident that

2   occurred after the date of this incident involving allegations of excessive use of force (Whitmore

3   Claim).  That incident,  in addition to occurring after the incident at issue in this case, is also a

4   significantly different factual situation.

5       Defendants hereby move this Court for an order excluding any and all evidence of prior

6   or subsequent "use of force" acts by CITY and/or individual officer defendants including but not

7   limited to the Thurston case or Whitmore claim.

8       Federal Rule of Evidence 404(b) governs the admissibility of "other act" evidence.  It

9   provides:

10       "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a
   person in order to show action in conformity therewith.  It may, however, be admissible

11   for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
   knowledge, identity, or absence of mistake or accident."

12

13       Evidence of prior "use of force" litigation or incidents involving the officers is not

14   admissible for the purpose of proving liability against the officer in this case.  Martin A.

15   Schwartz, Section 1983 Litigation: Federal Evidence § 2.6 (3rd Ed. 1999).

16       In a similar situation, the court held in *Duran v. City of Maywood,* 221 F.3d 1127 (9th Cir.

17   2000), that the trial court properly excluded evidence of a subsequent shooting by the same

18   officer in a section 1983 case that occurred three days after the incident at issue because even if

19   there was any marginal relevance, it was outweighed by the prejudice to the defendant and the

20   undue consumption of time that would be taken up to essentially have a "full blown trial with a

21   trial" to review the other incident.  The same is true in the instant case.

22       Introduction of such evidence would be irrelevant to the issues before this court; such

23   evidence would be inadmissible character evidence; and such evidence would be highly

24   prejudicial to defendants because it would invite the fact finder to infer unreasonably and

25   illogically that evidence of a prior or subsequent "use of force" incident supported a finding of a

26   propensity to violence by a defendant as opposed to a reasonable response to another factual

27   scenario.

28       Moreover, defendants have no notice of what evidence plaintiffs might seek to introduce

1  of prior or subsequent "use of force" acts, and such evidence should be barred from introduction

2  to prevent defendants from being tried for some other incident that has not been subject to

3  discovery or litigation, or preparation of a defense.  Admission of this type of evidence would

4  directly contradict *Graham, supra*, which makes the salient inquiry "whether the officer's actions

5  are objectively reasonable *in light of the facts and circumstances confronting them*" 490 U.S. at

6  397 [emphasis added].  The inquiry does not relate to some other set of facts, but the one before

7  the fact finder.

8         Defendants therefore request that the court instruct plaintiffs, their witnesses and counsel

9  not to comment on, interrogate any witness regarding, or make any reference to any other acts or

10  conduct of the defendant officers or the City of Santa Rosa Police Department arising out of any

11  incidents other than the incident at issue in this case.

12         Although defendants may attempt to argue that this evidence relates to the sole remaining

13  Monell case against the City that the City had a defacto policy of not disciplining officers for the

14  use of excessive force, there is no evidence that any officers of the Santa Rosa police department

15  used excessive or deadly force inappropriately or evidence as to any discipline or lack thereof.

16  There has been no civil judgment against the City of Santa Rosa based on the use of excessive or

17  deadly force nor has there been any criminal charges filed against any officer.  There is simply no

18  pattern of practice of the use of excessive force.  The only basis for the assertion of such a claim

19  is an answer to a confusing deposition question by former Chief Ed Flint taken out of context and

20  completely contrary to his prior deposition testimony that the appropriate standard for

21  determining the appropriate use of force was as set forth in *Graham v Conner*.  (See Deposition

22  Testimony of Ed Flint, page 37, line 4-page 38 line 16 attached hereto as Exhibit B).

23         If the court considers the admission of any such evidence, defendants request that the

24  court first conduct a hearing under Federal Rules of Evidence 104 (c)(3) or Rule 611(c) to

25  //

26  //

27

28

1    determine the foundation for its relevance in order to avoid any prejudice to defendants from its

2    improper admission.

3    Dated: June 12, 2012                        OFFICE OF THE CITY ATTORNEY

4

5                                                Caroline L. Fowler, City Attorney

6                                                John J. Fritsch, Assistant City Attorney
                                                 Attorneys for Defendants
7

8                                    **ORDER**

9         Satisfactory proof having been made, it is hereby ordered as follows:

10        1.      Any and all evidence of prior or subsequent "use of force" acts by CITY and/or

11                individual officer defendants shall be excluded.

12        2.      All parties' counsel shall caution, warn and instruct their clients and their

13                witnesses from attempting to introduce such evidence during the trial of this

14                matter, and from referring to the existence of such evidence during the trial of this

15                matter.

16   Dated: July ___, 2012                       _____

17                                               Hon. Jeffrey White, Judge
                                                 United States District Court
18

19

20

21

22

23

24

25

26

27

28

---

Defendants' Motion *in Limine* No. 2, C 07-3382 JSW                                    Page 4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Anderson P. Thurston, )
       Plaintiff, ) No. C 08-1115 CRB
      )
   v. ) ORDER GRANTING
      ) DEFENDANTS' MOTION FOR
Santa Rosa Police Dep't, et al., ) SUMMARY JUDGMENT
      )
       Defendant. ) (Docket # 28)
      )
      )

    Plaintiff, an inmate at Mule Creek State Prison, seeks damages under 42 U.S.C. § 1983 for the allegedly unlawful killing of his son by four City of Santa Rosa police officers.

    Per order filed on April 10, 2009, the Court found that plaintiff's allegations in his First Amended Complaint ("FAC") appeared to state a cognizable claim for damages under § 1983, when liberally construed, and ordered the United States Marshal to serve the four named officers -- Sergeant Richard Celli, Sergeant Stephen Schwartz, Officer John Barr and Officer Brian Boettger ("Defendants").

1    Defendants now move for summary judgment on the ground that

2    no triable issue exists as to any material fact and that they are

3    entitled to judgment as a matter of law.  Defendants also claim

4    they are entitled to qualified immunity.  Plaintiff has filed an

5    opposition and Defendants have filed a reply.

6

7                            BACKGROUND

8    Defendants are all officers of the Santa Rosa Police

9    Department's Special Weapons and Tactics ("SWAT") team.  On

10   February 23, 2007, they were called out to assist in executing an

11   arrest warrant on Plaintiff's son, Haki Thurston.  The Oakland

12   Police Department informed the Santa Rosa Police Department that

13   the warrant was for Thurston's suspected murder of his cousin in

14   the laundromat of an apartment complex in Oakland.  Wingate Decl.

15   ¶ 3.  According to the Oakland Police Department, Thurston,

16   Hodari Benson and a few other people were playing a dice game

17   when Thurston and Benson got into an argument.  Id.  At one

18   point, Thurston pulled out a 9 mm semi-automatic handgun from his

19   right pocket and killed Benson.  Id.  The Oakland Police

20   Department never recovered the weapon.  Id.  Thurston, Hodari

21   Benson's brother, Jatari Fisher, and Thurston's girlfriend,

22   Cynthia Lanway, drove the body to the hills and dumped it down an

23   embankment.  Id.

24   The Oakland Police Department further informed the Santa

25   Rosa Police Department that the Vallejo Police Department

26   suspected Haki Thurston of involvement in a residential burglary,

27   during which several firearms were stolen.  Id.  The Oakland

28   Police Department learned that Haki Thurston and Cynthia Lanway

United States District Court
For the Northern District of California

2

1   were staying in a motel in Santa Rosa and contacted the Santa

2   Rosa Police Department for assistance in executing the arrest

3   warrant. Id. Because they believed Thurston to be armed and

4   dangerous, they called out the SWAT team. Id. The two

5   departments met in the field, were briefed by officers of the

6   Oakland Police Department on the situation, contacted undercover

7   agents watching the motel and then moved into position at the

8   motel. Id.

9       Haki Thurston exited the motel and was walking through the

10  parking lot when SWAT officers first engaged him. Celli Decl. ¶

11  8. Not responding to their identification as police and their

12  commands to get on the ground, Thurston ran towards a wooded area

13  and fence between the motel and the highway. Id. ¶ 9. According

14  to Defendants, he reached into his waistband as he neared the

15  wooded area and fence. Id. ¶ 10. Fearing that he was reaching

16  for a weapon, the SWAT officers opened fire and Thurston fell to

17  the ground. Id. No weapon was found on him. Id. Thurston

18  suffered 11 gunshot wounds and was pronounced dead on arrival at

19  the hospital. Mot. for Summ. J. Ex. 7

20      The shooting triggered Santa Rosa Police Department

21  protocols for Officer Involved Shootings ("OIS"). The Santa Rosa

22  Sheriff's Department and the Sonoma County District Attorney

23  conducted an investigation of the incident, reaching the

24  conclusion that the death of Haki Thurston was not by criminal

25  act, unlawful act or an omission to act. Critical Incident

26  Report, Santa Rosa Police Department Employee-Involved Fatal

27  Incident.

28  /

United States District Court
For the Northern District of California

3

DISCUSSION

A.    Standard of Review

1      Summary judgment is proper where the pleadings, discovery
and affidavits show that there is "no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are
those which may affect the outcome of the case.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a
material fact is genuine if there is sufficient evidence for a
reasonable jury to return a verdict for the nonmoving party.  Id.

2      The moving party for summary judgment bears the initial
burden of identifying those portions of the pleadings, discovery
and affidavits which demonstrate the absence of a genuine issue
of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323
(1986).  Where the moving party will have the burden of proof on
an issue at trial, it must affirmatively demonstrate that no
reasonable trier of fact could find other than for the moving
party.  But on an issue for which the opposing party will have
the burden of proof at trial, as is the case here, the moving
party need only point out "that there is an absence of evidence
to support the nonmoving party's case."  Id.

3      Once the moving party meets its initial burden, the
nonmoving party must go beyond the pleadings and, by its own
affidavits or discovery, "set forth specific facts showing that
there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If
the nonmoving party fails to make this showing, "the moving party
is entitled to judgment as a matter of law."  Celotex Corp., 477
U.S. at 323.

B.   Claims & Analysis

Plaintiff claims that Defendants used unlawful deadly force in apprehending his son, Haki Thurston, in violation of his Fourth Amendment rights.  He further claims that due to Defendants' actions, he and his granddaughter have lost the consortium of Thurston in violation of the Due Process Clause of the Fourteenth Amendment.

1.   Deadly Force

While the use of "force" is reasonable under the Fourth Amendment where it would seem justified to a reasonable officer in light of the surrounding circumstances, the use of "deadly force" is only justified where the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  Tennessee v. Garner, 471 U.S. 1, 3 (1985).

Under Garner, an officer may be justified in using deadly force if a suspect threatens him with a weapon such as a gun or a knife.  Haugen v. Brosseau, 351 F.3d 372, 381 (9th Cir. 2003) (citing cases), judgment rev'd on other grounds, 543 U.S. 194 (2004).  And he may be justified in using deadly force based on the nature of the crime committed by the fleeing suspect.  Id. at 382 (citing cases).  As Garner put it, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  Garner, 471 U.S. at 11-12.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Defendants claim they are entitled to summary judgment because they had probable cause to believe that the use of deadly force was necessary under the circumstances.  In support, they submit declarations and documentary evidence showing the following:

On February 23, 2007, some time between 9:00 p.m. and 10:00 p.m., personnel from the Oakland and Santa Rosa police departments (including Defendants) assembled at a command post near the Comfort Inn Motel in Santa Rosa.  During a joint briefing, Defendants were informed that they were preparing to execute an arrest warrant for Thurston's alleged murder of his cousin.  Defendants reviewed the warrant, pictures of the suspect and discussed with all present the heightened concern for the safety of the officers and motel patrons.  During the briefing, Defendants also learned that the murder weapon had not been recovered, that the suspect was also a suspect in a residential burglary in the City of Vallejo in which several firearms and assault weapons were stolen.  The suspect was considered to be armed and dangerous.  Celli Decl. ¶ 5.

During the field briefing, a radio transmission was received from the undercover Oakland Police Department officers who were located in the motel parking lot.  They reported that Thurston had exited his motel room and was walking around outside.  Defendants (all members of the Santa Rosa SWAT team) then moved to the motel.  Id. ¶ 6.

Upon arriving at the motel, Defendants monitored radio traffic from the undercover Oakland Police Department officers who were watching Thurston's movements.  Id. ¶ 7.  Defendants

learned that Thurston was walking in the south parking lot of the motel complex.  Id.  Defendants exited their vehicles and moved along the east side of the building, from north to south.  As they approached the southeast corner, they saw an individual matching the description of Haki Thurston running east. Defendants then identified themselves as police officers, shouting "Police, Police," and ordering the suspect to "Get on the ground, Get on the ground!"  Defendants also commanded Thurston to "Put your hands out where we can see them."  Celli Decl. ¶ 8.

Thurston ignored police commands to stop and instead ran east, away from Defendants and toward a wooded area that separated the motel from southbound U.S. 101.  Id. ¶ 9. Each SWAT team member defendant declares under penalty of perjury that, as Thurston reached the wooded area and fence line, and as Defendants continued to shout out orders for him to stop, show his hands and get on the ground, Thurston reached towards his waistband.  As they observed this, Sergeant Celli shouted "He's reaching, He's reaching!!"  Thurston then began to turn towards them.  At that moment, Defendants feared that Thurston was trying to pull out his weapon and shoot them from behind the trees he had reached as they were out in the open.  Defendants, nearly simultaneously, fired their weapons at Thurston and he fell to the ground.  Barr Decl. ¶ 10; Boettger Decl. ¶ 8; Celli Decl. ¶ 10; Schwartz Decl. ¶ 10.  No weapon was found on Thurston.  Celli Decl. ¶ 10.  Thurston suffered 11 gunshot wounds and was pronounced dead on arrival at Santa Rosa Memorial Hospital. Mot. for Summ. J. Ex. 7.

7

United States District Court
For the Northern District of California

1    Under these facts, Defendants had probable cause to believe

2    that Thurston posed "a significant threat of death or serious

3    physical injury to the officer[s] or others." Garner, 471 U.S.

4    at 3.  Defendants were executing an arrest warrant for murder on

5    a suspect who was considered armed and dangerous -- Thurston had

6    shot and killed his cousin after an argument, and was a suspect

7    in the recent theft of several firearms and assault weapons.

8    When Defendants commanded him to stop, get on the ground and show

9    his hands, Thurston turned and ran.  He continued to ignore their

10   commands as he ran.  When Thurston reached the cover of large

11   trees, behind which he could protect himself, he reached into his

12   waistband, a common area for an individual to hide a gun.  He

13   then began to turn, while still reaching into his waistband.

14   Defendants were out in the open, with no coverage, giving rise to

15   the reasonable belief that they would be entirely exposed to

16   gunfire.  Under these circumstances, it cannot be said that

17   Defendants' use of deadly force violated Thurston's Fourth

18   Amendment rights. Cf. Forrett v. Richardson, 112 F.3d 416, 419-

19   21 (9th Cir. 1997) (finding deadly force was reasonable under 4th

20   Amendment where fleeing suspect had shot a victim in the course

21   of a burglary and had disregarded warnings).

22       Plaintiff does not offer a different eyewitness version of

23   the facts.  Nor does he submit any other evidence to controvert

24   the facts Defendants have set forth.  Rather, he argues that

25   there were non-deadly alternatives (namely pepper spray)

26   Defendants failed to employ before using deadly force on his son.

27   Pl.'s Opp. at 3, 7.  But the Fourth Amendment does not require

28   police to exhaust every possible alternative before using

justifiable deadly force. <u>Forrett</u>, 112 F.3d at 420. The alternative must be reasonably likely to lead to apprehension before the suspect can cause further harm and must be apparent to a reasonable officer on the scene. <u>Id.</u> Here, it simply cannot be said that a reasonable officer on the scene would have thought to counter an imminent threat of gunfire with pepper spray. <u>See id.</u> (determination of whether a reasonable non-deadly alternative existed is made from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight).

Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial" on a Fourth Amendment claim. Fed. R. Civ. P. 56(e). His unsupported claim that the declarations and other evidence submitted by Defendants is false and misleading is not enough to defeat summary judgment. <u>See Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment). Defendants are entitled to summary judgment as a matter of law. <u>Celotex Corp.</u>, 477 U.S. at 323.

At minimum, Defendants are entitled to qualified immunity from damages because reasonable officers could have believed that their conduct was lawful under the circumstances. <u>See Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004); <u>Saucier v. Katz</u>, 533 U.S. 194, 205-06 (2001). Or, put differently, reasonable officers could have believed that Thurston posed a significant threat of death or serious bodily harm to the officers or others, even if it now turns out that Thurston did not have a gun. <u>See id.</u>

/

/

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## 2. Substantive Due Process

Surviving family members of a person killed by law enforcement officers may bring a claim under § 1983 for violation of their substantive due process rights in the companionship and society of the decedent. Moreland v. Las Vegas Metro. Police, 159 F.3d 365, 371 (9th Cir. 1998). The standard of culpability applicable to such a claim is arbitrary conduct which shocks the conscience. See County of Sacramento v. Lewis, 523 U.S. 833, 845-47 (1998). The shock the conscience test may be met by showing that a defendant acted with deliberate indifference or by showing that he acted with a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). If the officers had the opportunity for actual deliberation, the deliberate indifference standard applies, but if there was not sufficient time for such deliberation, then the plaintiff must satisfy the more stringent purpose to harm standard. Id. at 1137-40 (discussing Lewis and progeny). To satisfy the purpose to harm standard, a plaintiff must show "the intent to inflict force beyond that which is required by a legitimate law enforcement objective." Id. at 1140 (citations and internal quotations omitted).

Here, the undisputed facts show that Defendants did not violate the Fourth Amendment because their use of deadly force was reasonable under the circumstances. The undisputed facts also show that Defendants did not violate Plaintiff's substantive due process rights in the companionship and society of his son. Defendants' reasonable use of deadly force does not satisfy the

1   shock the conscience standard applicable to Plaintiff's

2   substantive due process claim; such justifiable force was

3   inextricably and necessarily related to legitimate law

4   enforcement objectives. See id.

5

6                                CONCLUSION

7       For the foregoing reasons, Defendants' motion for summary

8   judgment (docket # 28) is GRANTED.

9       The Clerk shall enter judgment in favor of Defendants,

10  terminate all pending motions as moot/lacking merit, and close

11  the file.

12  IT IS SO ORDERED.

13  DATED:   March 2, 2010

                                    Charles R. Breyer
14                                  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28  G:\PRO-SE\CRB\CR.08\Thurston, A1.msj.wpd

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

---oOo---

PATRICIA DeSANTIS,                    )
individually and as Successor         )
in Interest for RICHARD               )
DeSANTIS, deceased, and as            )
Guardian Ad Litem for DANI            )
DeSANTIS, a minor and TIMOTHY         )
FARRELL, a minor,                     )
                                      )
                 Plaintiffs,          )
                                      )
      vs.                             )
                                      )   No. C 07 3386 JSW
                                      )
CITY OF SANTA ROSA, JERRY             )
SOARES, RICH CELLI, TRAVIS            )
MENKE, PATRICIA MANN, and DOES        )
1 through 25, inclusive,              )
                                      )
                 Defendants.          )
                                      )
_____)

DEPOSITION OF CHIEF ED FLINT

July 31, 2008

REPORTED BY:  A. MAGGI SAUNDERS,

C.S.R. No. 2755



**A. Maggi Saunders & Associates**
Certified Shorthand Reporters

57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755

(415) 383-6281

1    But I also reviewed shootings as a
2  Division Commander, some of those.
3    Q.    Approximately how many as a Division
4  Commander?
5    A.    I don't recall.  It was several.
6    Q.    How many --
7    A.    -- approximately it was several.
8    Q.    How many of those shootings involved an
9  unarmed person who was shot?
10    MS. FOWLER:  The ones he reviewed as a
11  Division Commander?
12    MR. SCOTT:  Q.  Yes.
13    A.    I don't recall the particulars.  That
14  would be quite a few years ago.
15    Q.    Okay.  And if I understand you correctly,
16  you determined that all of those shootings were within
17  policy?
18    A.    I don't recall any being outside of policy
19  or, you know. . .
20    Q.    Could a police shooting be outside of
21  policy, but not be criminal?
22    MS. FOWLER:  Well, I'm going to object.
23  That's an incomplete hypothetical, overly broad, vague
24  and ambiguous.
25    MR. SCOTT:  Q.  Go ahead.

36

1          MS. FOWLER:  But if you can answer the
2  question as phrased, go ahead.
3          THE WITNESS:  Could you state that again?
4          MR. SCOTT:  Q.  Yeah.  Is it your
5  understanding that a police shooting could be outside
6  of policy, but not criminal?
7          A.    No.  Our policies are very specific with
8  respects to use of deadly force.  "Graham vs. Connor"
9  is, you know, the premier case on that, and we --
10  our -- the policy with respects to use of deadly force
11  has to be in [compliant] with the law.
12          So, they have to be congruent.
13          Q.    So, if I understand you correctly, if the
14  police shooting is not a criminal act, then, it is
15  within the policy.
16          A.    Correct.
17          Q.    Okay.
18          Now, when criminal investigations occur
19  of police shootings, do you understand the test is
20  "Beyond a Reasonable Doubt"?  In other words, they
21  are looking at it in terms of a criminal prosecution?
22          A.    Yes.
23          Q.    Okay.  Now, as the Police Chief, and you
24  are reviewing a shooting, are you looking at it from
25  "Beyond-the-Reasonable-Doubt" point of view, or just a

                                                    37

1  preponderance of the evidence, to determine whether it

2  was within policy?

3        A.    Probably a preponderance of the evidence.

4        Q.    Why is that?

5        A.    Well, I think, in all shootings, there's

6  unknowns.

7              And unless you are on the scene, and

8  able to put yourself -- which is very difficult to

9  do -- in the Officer's shoes at the time he or she

10  decides to use deadly force, it's difficult to know

11  all of the details and all of the -- all of the

12  things that may or may not have gone through the

13  Officer's mind at the time that they decided that

14  they feared for their life, or thought there was a

15  fear for someone else's life, that -- and they

16  decided to use deadly force.

17        Q.    Do you think a Police Officer is capable

18  of murder?

19              MS. FOWLER:  Well, I'm going to object.  I

20  think that's overly broad, vague and ambiguous, and

21  calls for speculation.

22              MR. SCOTT:  It goes to bias and motive.

23        Q.    Do you think a Police Officer is capable

24  of murder?

25        A.    Yes.

                                                    38